354 So.2d 672 (1977)
JUBAN PROPERTIES, INC.
v.
Robert G. CLAITOR.
No. 11698.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Writ Refused March 27, 1978.
*673 Drew McKinnis, Baton Rouge, of counsel for plaintiff-appellant Juban Properties, Inc.
R. Boatner Howell, Jr., Baton Rouge, of counsel for defendant-appellee Robert G. Claitor.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
Plaintiff, Juban Properties, Inc., filed suit seeking a declaratory judgment affirming its right to construct a fence along the eastern boundary line of its property located in the City of Baton Rouge. From an adverse judgment plaintiff has filed this appeal.
Defendant, Robert G. Claitor, is the owner of Lot # 8, East Richland Estates, which is contiguous to and east of plaintiff's property. Additionally, Mr. Claitor is the owner of a tract of land which is located west of plaintiff's property and separated therefrom by property belonging to the Kroger Company.
On August 21, 1970, plaintiff, Mr. Robert G. Claitor, and the Kroger Company entered into an agreement (Reciprocal Agreement) for the joint use of their adjacent properties as a shopping center. At the time the Reciprocal Agreement was executed, Mr. Claitor did not own the tract of land east of plaintiff's property. The Reciprocal Agreement is in reference to and involves only Parcel # 1, belonging to Mr. Claitor; Parcel # 2, belonging to the Kroger Company; and Parcel # 3, belonging to plaintiff.
The agreement provided that Claitor was to construct and maintain an unobstructed twenty foot driveway along the western line of the property adjacent to Acadian Thruway. All three were required to pave and maintain an unobstructed and continuous driveway across the rear of the properties for service vehicles, and plaintiff was required to construct and maintain a driveway along the easterly fifteen feet of his property. We note the omission of the word "unobstructed" in the clause pertaining *674 to the driveway plaintiff was to construct and are persuaded that this was advisably done and not a mere error of omission. Further, each party was to pave and maintain at his own expense his remainder of the Common Area between the store fronts and Perkins Road for drives and parking in accordance with a unified parking lot layout. And, each party granted to all of the other parties a non-exclusive easement in the entire Common Area of Parcels #1, #2, and # 3 for use by pedestrians and vehicular traffic and the parking of automobiles by the business invitees, customers and employees of each, its tenants, successors or assigns.
With the subsequent acquisition of the Second Claitor Estate which tract had a narrow front footage of approximately seventy-five feet, Mr. Claitor developed the entire length of that tract from the rear to Perkins Road with a building facing the Common Area of the adjacent shopping center for lease to various businesses so as to take advantage of the parking facilities of the shopping center and the fifteen foot service drive to the rear constructed and maintained by plaintiff under the Reciprocal Agreement.
In denying plaintiff's declaratory judgment the trial court held that under the terms of the Reciprocal Agreement requiring plaintiff to maintain a driveway along the entire easterly fifteen feet of his property, erection of a fence would impair this obligation because no longer would the entire easterly fifteen feet be burdened with the servitude and part of the eastern fifteen feet would be taken up by the fence and impair and interfere with vehicular traffic using the driveway.
Plaintiff contends that the trial court erred in ruling that construction of a fence along its boundary violated the provisions of the Reciprocal Agreement between the property owners, particularly where it was shown that plaintiff exceeded his contractual obligation by constructing a twenty foot driveway rather than a fifteen foot driveway.
Civil Code Article 743 provides:
"Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery."
It is clear that the "Reciprocal Agreement" entered into between the plaintiff, Mr. Claitor and the Kroger Company established servitudes of passage by convention along the perimeters of the shopping center for the common use of not only the parties, but also their customers, employees, invitees, etc. It is likewise clear that the "Reciprocal Agreement" did not contemplate inclusion of the Second Claitor Estate bordering on plaintiff's property for obvious reasons. In the first place, Mr. Claitor didn't acquire the second tract until after the Reciprocal Agreement was entered into. Secondly, the agreement itself refers only to Parcels # 1, # 2 and # 3 and makes no mention of Mr. Claitor's second tract, therefore the parties obviously did not intend for it to be included within the agreement. Finally, Mr. Claitor himself could not have considered his second tract to have been included in the agreement because his development on that tract did not even attempt to comply with the provisions and restrictions of the agreement.
Consequently, the servitude of passage being in the nature of a predial servitude, any impairment to such passage over plaintiff's fifteen foot service drive due to construction of a fence would necessarily have to impair rights created only in favor of the First Claitor Estate (Parcel # 1), and the Kroger Company Property (Parcel # 2), these being the only other properties subject to the agreement. La.C.C. Art. 646, et seq., and Art. 709.
Civil Code Article 722 further provides that when a servitude of passage is the result of a contract, its extent and the mode of using it is regulated by the contract.
As long as the driveway is maintained and clear passage is provided for the benefit of Parcels # 1 and # 2, there is nothing in the agreement to prevent plaintiff from *675 constructing a fence on the eastern boundary of his property. The existence of a fence would occupy no more than a few inches, and considering the fact that most of the driveway, although not all, is twenty feet in width, plaintiff has actually exceeded the requirements for his obligation under the agreement. Thus, for most of the length of the driveway, the fifteen foot width would remain clear and unaffected. The remaining section would be affected by the existence of the fence but would not obstruct or impair the free passage of traffic. Consequently, the construction of a fence by the plaintiff along his eastern border line would not violate the terms of the "Reciprocal Agreement."
Further support for our conclusion is found in Civil Code Article 662 which provides that "Every proprietor has a right to make an inclosure around his lands," and Article 753 which provides:
"Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected."
In view of the law and the provisions of the Reciprocal Agreement, the judgment of the trial court denying plaintiff's declaratory judgment was in error. Accordingly, we reverse and render judgment in favor of plaintiff and against defendant declaring that the construction of a fence along the eastern boundary of plaintiff's property would not violate the Reciprocal Agreement.
All costs are taxed against defendant.
REVERSED AND RENDERED.