391 So.2d 394 (1980)
R. G. CLAITOR'S REALTY et al.
v.
Ray A. JUBAN et al.
No. 65403.
Supreme Court of Louisiana.
January 28, 1980.
On Rehearing October 20, 1980.
*395 Mack E. Barham, Charles F. Thensted, Barham & Churchill, New Orleans, Cordell Haymon, Haymon & Arbour, Ltd., Frank M. Coates, Jr., Taylor, Porter, Brooks & Fuller, Baton Rouge (Professor A. N. Yiannopoulos, Baton Rouge, of counsel), for plaintiffs-applicants.
E. Drew McKinnis, McKinnis, Juban, Bevan, Baton Rouge, for defendants respondents.
MARCUS, Justice.
On August 21, 1970, Robert G. Claitor, Ray A. Juban and The Kroger Co. entered into a "Reciprocal Agreement" for the joint use of their adjoining properties as a shopping center. Claitor owned the westernmost parcel (Parcel No. 1); Kroger owned the center parcel (Parcel No. 2); Juban owned the easternmost parcel (Parcel No. 3). Subsequent to the execution of the agreement, Juban sold Parcel No. 3 to Juban Properties, Inc. and Claitor acquired Lot No. 8, East Richland Estates, which is contiguous to and east of Parcel No. 3.
On August 12, 1975, Juban Properties, Inc. filed suit seeking a declaratory judgment affirming its right to construct a fence along the eastern boundary line of Parcel No. 3. Robert G. Claitor was named defendant. On May 19, 1977, the trial court denied Juban Properties, Inc. a declaratory judgment. On December 28, 1977, the court of appeal reversed, rendering judgment in favor of plaintiff and against defendant "declaring that the construction of a fence along the eastern boundary of plaintiff's property would not violate the Reciprocal Agreement."[1] We denied writs.[2] Juban Properties, Inc. proceeded to construct the fence.
On June 16, 1978, the present action was filed seeking an injunction ordering defendants therein to remove the fence. Plaintiffs in this suit are Robert G. Claitor, his wife, Nancy M. Claitor, and R. G. Claitor's Realty, a partnership in commendam that had acquired Lot No. 8, East Richland Estates, on December 30, 1976, during the previous litigation. Robert G. Claitor is the general partner of Realty; the partners in commendam are the separate trusts of his and his wife's four children. Named defendants are Ray A. Juban, Juban Properties, Inc. and T.G.&Y. Stores Company, Inc., lessee of Parcel No. 3. On August 30, 1978, Louisiana National Bank of Baton Rouge (LNB) filed a petition of intervention as trustee of the Claitor children's trusts, seeking removal of the fence. The trusts had acquired Parcel No. 2 from Realty on December 26, 1977; Realty had purchased it from The Kroger Co. on November 23, 1977.
Defendants filed a peremptory exception of res judicata. Additionally T.G.& Y. filed an exception of no cause of action. The trial court overruled the exception of res judicata and took T.G.&Y.'s exception of no cause of action under advisement. Defendants then filed a motion for summary judgment on the ground that the petition, sworn affidavit accompanying the motion for summary judgment and the record of the previous suit showed that there was no genuine issue of material fact and that defendants were entitled to judgment as a matter of law. The trial court granted the motion for summary judgment filed by defendants Ray *396 A. Juban and Juban Properties, Inc., dismissing plaintiffs' suit against them, sustained the exception of no cause of action filed by defendant T.G.&Y. Stores Company, Inc., dismissing plaintiffs' suit as to it, and further ordered that the intervention of LNB be dismissed. Plaintiffs appealed.[3] The court of appeal affirmed. We granted certiorari to review the correctness of the decision of the court of appeal.[4]
At the outset, we note that LNB, intervenor and owner of Parcel No. 2, did not appeal from the judgment of the trial court dismissing its intervention. Plaintiffs alone have appealed; consequently, claims of LNB cannot be reviewed by this court. Daly v. Opelousas Ins. Agency, 181 La. 89, 158 So. 631 (1934); White v. Fifth Regular Baptist Church, 31 La.Ann. 521 (1879); Jenkins v. Stonebraker, 201 So.2d 698 (La.App. 2d Cir. 1967); Tillman v. Public Belt R.R. Comm'n, 42 So.2d 888 (La.App.Orl.1949).
We now proceed with the merits of plaintiffs' appeal. Plaintiffs present three issues for our consideration: (1) whether the overruling by the trial court of defendants' exception of res judicata established the law of the case and precludes a later finding of res judicata by the trial court; (2) whether a summary judgment can be granted based on a finding of res judicata; and (3) whether the facts of this case support a finding of res judicata.
The Code of Civil Procedure permits a reconsideration of the overruling of peremptory exceptions. La.Code Civ.P. art. 928; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972); La.Code Civ.P. art. 1152, comment (b). The overruling of a peremptory exception is merely an interlocutory order and the court has the right, at any stage of the proceeding at which the objection was made, to set aside that decree and to sustain the exception, upon finding that it erred in overruling it. Babineaux v. Pernie-Bailey Drilling Co., supra; Labourette v. Doullut & Williams Shipbuilding Co., 156 La. 412, 100 So. 547 (1924); Register v. Harrell, 131 La. 983, 60 So. 638 (1912). Accordingly, in the instant case, the overruling of defendants' exception of res judicata did not preclude the trial court from later reversing itself and sustaining the exception.
Plaintiffs next contend the trial court was without authority to grant a summary judgment based on a finding of res judicata. La.Code Civ.P. art. 966 provides that the plaintiff or defendant may move for a summary judgment in his favor and that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Defendants specially pleaded the exception of res judicata as required by La.Code Civ.P. art. 927; additionally, they effectively reurged the exception in the motion for summary judgment[5] and the supporting affidavit.[6] *397 The record of the previous suit and the pleadings in this case are before the court. They present no genuine issue as to material fact concerning the applicability of res judicata. Therefore, should the facts support a finding of res judicata, defendants would be entitled to judgment as a matter of law. Accordingly, we have left only to consider whether the facts support a finding of res judicata.
The principles governing the content and application of res judicata are located in the section of the Civil Code concerning legal presumptions. One presumption drawn by the law attributes authority to the "thing adjudged" (which is a literal translation of the Latin "res judicata") as proof of the existence or non-existence of certain facts. La.Civ.Code art. 2285. The "thing adjudged" consists
of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.
Id. art. 3556(31). Article 2286 details the requisites of a "thing adjudged":
The authority of the thing adjudged takes place only with respect of what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Thus, in determining whether plaintiffs' right to have the fence removed in this case is a "thing adjudged" to which we must accord conclusive authority, we must first consult the former suit. Applying the principles of art. 2286, if there exist identical demands, causes and parties between the first suit and the present litigation, the "object of the [former] judgment" acquires the authority of the "thing adjudged," and the legal presumption arising in defendants' favor and appended to the "thing adjudged" bars its relitigation.
In the instant case, the thing demanded was the removal by defendants of a fence which they had constructed. In the first suit, the thing demanded was a declaration of the right of plaintiff therein to construct the same fence. Clearly, the same thing was demanded in both suits. See State ex rel. Guste v. City of New Orleans, 363 So.2d 678 (La.1978).
Next, we consider whether the cause upon which the demands in the two suits were founded are the same. Plaintiffs contend the causes are different for two reasons: (1) the first suit was a declaratory action, whereas the present suit is a possessory or petitory action; and (2) the first suit adjudicated only whether the Reciprocal Agreement created a servitude on Parcel No. 3 in favor of Parcel No. 1 and Lot No. 8 and the present suit concerns servitudes created independently of the Reciprocal Agreement.
Plaintiffs' first contention is without merit. The term "the same cause of action" in art. 2286 is a mistranslation. The article should read "the same cause." Thus, the proper interpretation of art. 2286 requires a consideration of the broader concept of cause at civil law rather than the common law cause of action. Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Sliman v. McBee, 311 So.2d 248 (La.1975). Therefore, that the original suit was a declaratory action and the instant suit is a possessory or petitory action is of no moment here. Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La.1974); Norah v. Crawford, 218 La. 433, 49 So.2d 751 (1950); Greenwood Planting & Mfg. Co. v. Whitney Central Trust & Savings Bank, 146 La. 567, 83 So. 832 (1920).
Plaintiffs' second contention is also without merit, even though the final judgment in the first suit stated: "[C]onstruction of a fence along the eastern boundary of plaintiff's [Juban Properties, Inc.'s] property would not violate the Reciprocal Agreement." Juban Properties, Inc. v. Claitor, 354 So.2d 672 (La.App. 1st Cir. *398 1977). Our jurisprudence has rested on a solid foundation the rule that all the issues presented by the pleadings, and on which evidence has been offered, will be considered as disposed of by a final judgment in the cause, and that demands passed over in silence must be considered as rejected in the absence of a special reservation. Sewell v. Argonaut Southwest Ins. Co., 362 So.2d 758 (La.1978); Villars v. Faivre, 36 La.Ann. 398 (1884). In the instant case, the record in the first suit indicates the issue of servitudes created independently of the Reciprocal Agreement was presented by the pleadings and evidence was taken thereon. In particular, the petition of Juban Properties, Inc. alleged:
Plaintiff has not granted defendant or his property a servitude of any character upon plaintiff's property and neither defendant nor his employees nor customers have any right to use plaintiff's property.
Robert G. Claitor's answer denied the above allegation and further asserted:
Alternatively, Robert G. Claitor alleges that the property owned by Juban Properties, Inc. is subject to real rights burdening it, and in favor of Robert G. Claitor and the said Lot 8, East Richland Estates.
. . . . .
... [T]he Juban property is subject to a servitude or passage of way because of the reciprocal agreement ... and ... the erection of fence on any part of that servitude would impair the servitude, in violation of the reciprocal agreement.
The pretrial order reflects the same contentions, and the transcript of the trial reveals that evidence was adduced on these issues. Therefore, the existence of a servitude independent of the Reciprocal Agreement must be considered to have been rejected in the first suit. Accordingly, we find the demands in the instant suit to be founded on the same cause as in the first suit.
Lastly, we must consider whether the two suits are between the same parties. Clearly, Robert G. Claitor and Juban Properties, Inc. were parties to the original suit; thus, the judgment therein is res judicata as to them.
R. G. Claitor's Realty was not actually a party to the original suit. However, this court has stated that, under the civil law doctrine, the ayants cause, or successors, of the parties of record are considered parties to the demand when they acquire title after the institution of the original suit in which judgment is rendered. Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965); Roach v. Craig, 124 La. 684, 50 So. 652 (1909); Hargrave v. Mouton, 109 La. 533, 33 So. 590 (1903); Delabigarre v. Second Municipality of New Orleans, 3 La. Ann. 230 (1848). Such is the case here. The first suit was instituted on August 12, 1975. Realty thereafter acquired Lot No. 8, rights of which were subject to the first suit, on December 30, 1976. Therefore, Realty must be considered to have been party to the original suit. As such, the judgment therein is res judicata as to it.[7]
The remaining parties to the present suit, Nancy M. Claitor and Ray A. Juban, cannot be considered parties to the original suit. Hence, res judicata does not apply to them. However, La.Code Civ.P. art. 927 authorizes this court to notice on our own motion the peremptory exception of failure to disclose a right or interest in the plaintiff to institute the suit. Here, the pleadings fail to disclose the right or interest *399 of Nancy M. Claitor to institute this suit. Therefore, her claims must be dismissed.
The petition states no claim against Ray A. Juban individually except that he erected the fence. However, the affidavit filed by defendants with their motion for summary judgment states that Juban Properties, Inc. and not Ray A. Juban individually erected the fence. This statement is not controverted by plaintiffs' opposing affidavit. Additionally, he does not own any property subject to this litigation. Therefore, we find he is entitled to judgment as a matter of law dismissing plaintiffs' claims against him.

DECREE
For the reasons assigned, the claims of Nancy McClellan Claitor are dismissed for failure to state a right or interest on her part to institute this suit. Otherwise, the judgment of the court of appeal affirming the trial court's grant of summary judgment in favor of defendants, dismissing plaintiffs' claims, is affirmed.
DENNIS, J., dissents with reasons.
BLANCHE, J., recused.
DENNIS, Justice, dissenting.
I respectfully dissent.
Our summary judgment procedure is based on Federal Rule 56(a)-(c). See La.C. C.P. art. 966, Official Revision Comment. When res judicata and collateral estoppel turn on disputed facts, courts do not use the summary judgment procedure to determine the issues raised. As a result, summary judgment has been denied when there was some question about the sufficiency of the relationship between the parties to the two actions, the validity of the former adjudication, the scope of the earlier decision, or the court had any doubt as to the application of res judicata. 10 Wright and Miller, Federal Practice & Procedure, § 2735, and authorities cited.
As evidenced by its initial ruling, the district court had grave doubt as to the application of res judicata to this case. Furthermore, in my opinion, there are serious questions as to the sufficiency of the relationship between the parties to the two actions and the scope of the earlier adjudication. These questions, therefore, should have been decided by trial and not by summary judgment.
There is serious doubt, also, that res judicata is applicable to this case. Transferees of particular objects, as distinguished from universal successors, are affected only by acts done by their transferors which concern the particular objects transferred; and that is true only as to such acts as are accomplished before the transfer takes place. Every transferee of a particular object or right has thus a double character, according to the time considered, that of ayant cause for the time before his acquisition, that of third party as to the time after that. 1 M. Planiol, Civil Law Treatise, § 304 (La.St.L.Inst.Transl.1959); 1 M. Pothier on Obligations, § 56 (Evans transl.1853). Accordingly, in the present case, since the particular property involved was transferred before judgment in the first lawsuit, the transferees were not ayant causes, but were third parties insofar as that judgment is concerned. See Pothier, supra, at §§ 51 et seq.

ON REHEARING
LEMMON, Justice.[*]
This is an action by R. G. Claitor's Realty (Claitor's Realty), a partnership which owned Lot 8 (shown on the attached sketch) when this suit was filed in June, 1978, to require Juban Properties, Inc. (Juban Properties) and Ray A. Juban (Juban), the current and former owners of adjoining Parcel 3, to remove a fence separating Parcel 3 from Lot 8. We granted certiorari to review the dismissal of the action by summary judgment.

*400 I.
The right of the owner of Parcel 3 to build this fence was the subject of prior litigation. A review of the facts and issues involved in that suit is necessary to a knowledgable resolution of the present action.
In 1970 the owners of three adjacent parcels of property formulated plans to develop a shopping center. At the time Robert Claitor (Claitor) owned Parcel 1, The Kroger Co. (Kroger) owned Parcel 2, and Juban owned Parcel 3. (Claitor subsequently acquired Lot 8.) On August 21, 1970 these three parties executed a Reciprocal Agreement in which they mutually consented to plans and specifications regarding construction and location of stores, driveways, and a common parking lot. Specifically, the owner of Parcel 1 agreed to construct and maintain an unobstructed driveway along the western twenty feet of the property; the owner of Parcel 3 agreed to construct and maintain a driveway along the eastern fifteen feet of the property; each owner agreed to construct and maintain a continuous and unobstructed driveway for service vehicles across the rear of his property; each owner further agreed to construct and maintain a parking lot in the "Common Area" of his property between the stores and Perkins Road; and each owner granted to the other "a nonexclusive [sic] easement in the entire Common Area of Parcels # 1, # 2, and # 3, for use by pedestrians and vehicular traffic and the parking of automobiles by the business invitees, customers and employees of each, its tenants, successors or assigns".
Significantly, the Reciprocal Agreement purported to affect Parcels 1, 2 and 3 and the rights and obligations of the owners of those properties only.
Later in 1970 Juban Properties acquired Parcel 3 from Juban.
After the parties had undertaken to perform their obligations under the Reciprocal Agreement, Claitor acquired Lot 8, adjacent to and east of Parcel 3, by two separate acts in 1971 and 1974, and thereafter constructed two buildings on Lot 8 (as shown on the annexed sketch). The building closest to Perkins Road contained seven stores which faced the parking lot on Parcel 3.

II.
In 1975 Juban Properties, as owner of Parcel 3, filed a petition for declaratory judgment against Claitor, as owner of Lot 8, seeking a declaration of Juban Properties' right to construct a fence along the property line separating Parcel 3 and Lot 8. Juban Properties alleged that the location of the buildings on Lot 8 caused the customers and employees of the stores on Lot 8 to travel on the driveway and park in the parking lot Juban Properties had constructed on Parcel 3 pursuant to its obligations under the 1970 Reciprocal Agreement executed by Claitor, Kroger, and Juban's ancestor in title.[1] The petition further asserted that neither Juban nor Juban Properties had ever granted a servitude affecting Parcel 3 in favor of Claitor or of Lot 8 and that Claitor's tenants on Lot 8 and their customers and employees had no right to use Parcel 3.
In his answer Claitor, without claiming any rights as owner of Parcel 1, asserted that the customers and employees of the stores located on Lot 8 had the right to use Parcel 3 for three reasons: (1) Parcel 3 was subject to a servitude of passage established in the Reciprocal Agreement in favor of the public, which would be impaired by erection of the fence; (2) Juban Properties was estopped from questioning Claitor's use of Parcel 3, because Juban Properties observed *401 construction of the buildings on Lot 8 and did not object to Claitor's use of Parcel 3 until the buildings had been completed, and (3) Juban Properties' contract of lease of Parcel 3 created a servitude for parking and driveway in favor of "Claitor and adjacent properties".
With the issues thus framed by the pleadings, the case proceeded to trial on March 3, 1977.[2] At trial, however, Claitor added, over objection of opposing counsel, another basis for his right to use Parcel 3, testifying that Juban had given him verbal permission to use the driveway along the eastern property line of Parcel 3 and that he had constructed the buildings in reliance on that verbal permission.[3]
Juban admitted he gave Claitor permission to use the service driveway between the store on Parcel 3 and Claitor's rear building on Lot 8 after that building had been completed, since Claitor had no other access to the fenced parking area behind the rear building on Lot 8. Juban denied, however, ever giving Claitor permission to use the driveway between the front of the stores on Parcel 3 and Perkins Road. Moreover, neither Juban nor Claitor testified as to any discussion of Claitor's right to use the parking lot on Parcel 3.
The trial court ruled that Juban had no right to erect a fence on the property line, reasoning that the fence would impair the fifteen-foot driveway servitude on the eastern boundary of Parcel 3. The court of appeal reversed on the basis that the driveway had been built twenty feet wide, in excess of the required width, and that construction of the fence on a few inches of the driveway would not violate the terms of the Reciprocal Agreement. See 354 So.2d 672. The court further observed that since the Reciprocal Agreement did not contemplate inclusion of Lot 8 in the shopping center project, there was nothing in the contract to prevent Juban from constructing a fence on the eastern boundary of his property. Although the issue was clearly before the court, the decision did not discuss either the factual issue of whether Juban gave Claitor verbal permission to use the driveway or the legal issue of the effect of Juban's verbal permission (if given) and of Claitor's construction in reliance on that permission.
This court denied Claitor's application for certiorari on March 27, 1978. 356 So.2d 440.

III.
Armed with the definitive declaratory judgment, Juban Properties erected the fence in June, 1978. Several days later Claitor's Realty and Mr. and Mrs. Claitor filed suit against Juban, Juban Properties, and the lessee of parcel 3, seeking a judgment recognizing plaintiffs' right to possession and restoring them to possession, and further seeking a mandatory injunction to require removal of the fence.[4] In the petition plaintiffs asserted that Juban Properties' contract of lease of Parcel 3 created "real rights of possession ... in favor of other estates and for third parties who are now possessing and have possessed for years quietly and peacefully"; that plaintiffs "own and possess conventional servitudes and real rights over [Parcel 3]"; that Juban and Juban Properties have no right to erect a fence on Parcel 3 and "no right of possession in said property"; that the fence impairs the conventional servitude established in the Reciprocal Agreement; that the fence is a disturbance of plaintiffs' possession of the servitude; that plaintiffs and their assigns were in possession of the property without interruption for more than one *402 year immediately prior to the recent disturbance; that the erection of the fence destroyed ingress and egress to and from adjoining properties; that the fence "obstructs and intrudes upon the right of petitioners and others claiming under them for full use and possession of the premises which they possess under the reciprocal agreement"; and that "[p]arties on the adjoining property who claim under petitioner have been forcibly evicted and ejected from their right of possession, and possession, ingress and egress which has accrued to them by virtue of said grant by defendants".
Juban and Juban Properties filed exceptions of res judicata and estoppel by judgment, which were overruled.[5]
Juban and Juban Properties then filed a motion for summary judgment. In support of the motion Juban, individually and as corporate officer, filed an affidavit stating that the corporation alone erected the fence pursuant to the final judgment in the earlier suit. They also filed the judgment and entire record in that suit.[6]
Claitor filed a counter affidavit stating that in numerous conversations prior to construction on Lot 8 Juban indicated the driveway on Parcel 3 would be available for his tenants and their customers; that those conversations created a right for the use of the driveway; that numerous persons told him Juban had made statements of similar import; and that these statements had been repeated in correspondence between Juban and his lessee.
The trial court granted the summary judgment and dismissed plaintiffs' suit, reasoning that the fence constructed in accordance with the definitive declaratory judgment did not constitute a disturbance entitling plaintiffs to institute a possessory action. The court of appeal affirmed in an unpublished opinion which essentially reiterated the trial court's reasoning. This court granted plaintiffs' application for certiorari. 375 So.2d 947.

IV.
In brief in this court plaintiff argues that this suit is based on two claims separate and distinct from those presented in the first suit: "(1) Juban's disturbance of plaintiffs' possession of the servitude, created by the Reciprocal Agreement, over Lot 3, in favor of Lot 2, which plaintiffs had purchased in 1977, and (2) Juban's disturbance of plaintiffs' possession of a servitude over Lot 3, in favor of Lot 8, arising out of the subsequent agreement of 1974."[7]
As to plaintiffs' rights under the Reciprocal Agreement as owner of Parcel 2, they have no right, as a matter of law, to object to the erection of the fence. The Reciprocal Agreement granted the owners of Parcels 1, 2, and 3 rights which were pertinent to the use of the property within the perimeter of those parcels and to access to the bordering streets. The right of access across Parcel 3 to Lot 8 was not mentioned in the agreement, and there was no indication the parties intended to have free access to Lot 8 as part of the shopping center project.
On this issue there was no genuine issue as to material fact, and defendants are entitled to judgment as a matter of law. The lower courts properly rendered a summary judgment rejecting that claim by plaintiffs.
Plaintiffs' second and principal claim is that a servitude over Parcel 3 in favor of Lot 8 was created by a verbal agreement subsequent to the Reciprocal Agreement. Claitor's assertion of a servitude created by a verbal agreement was rejected, at least implicitly, by the lower courts in the first *403 suit (although the issue was argued in brief in both courts), and the crucial question is whether the matter may be relitigated.
A plea of res judicata may be raised by motion for summary judgment when there is no genuine issue as to any material fact. Here, there is no dispute as to the facts necessary to determine the identity of the parties, the thing demanded, and the cause or ground on which the demand was founded in each suit. C.C. art. 2286. The determination of the plea of res judicata in this case is thus purely a question of law.
The thing demanded in the first suit was a declaration of Juban Properties' right to construct a fence. Claitor resisted by demanding a declaration that Juban Properties had no right to do so. In the present action the thing demanded is removal of the fence, on the basis that Juban Properties had no right to construct the fence. We conclude that the thing demanded was the same in both suits.
The cause or ground for the thing demanded was also the same in each suit. In the first suit the owner of Lot 8 asserted his right to unobstructed access to Parcel 3 arising from the 1970 Reciprocal Agreement, or from Juban Properties' contract of lease, or as the consequence of a verbal agreement subsequent to the Reciprocal Agreement. In the present action the owner of Lot 8 again asserts the right to unobstructed access to Parcel 3 (and the resulting right to remove the fence) as the consequence of the same alleged verbal agreement, but now argues for the first time that the verbal agreement, confessed by Juban under oath in a deposition, created a servitude under C.C. art. 2275.
While the reference to C.C. art. 2275 is a new argument for the creation of a servitude by an alleged verbal agreement subsequent to the Reciprocal Agreement, the issue of whether that verbal agreement (if proved) created a servitude was fully litigated in the first suit. Any servitude rights arising from the verbal agreement cannot now be relitigated.
Identity of parties presents a slightly more difficult problem. However, Claitor was sued in the original action as the owner of Lot 8. Although he conveyed Lot 8 to a partnership consisting of himself, his wife, and family trusts between the filing of the suit and the trial, he did not substitute the partnership (a partnership in commendam in which he was the general partner) and apparently did not reveal the fact of the conveyance prior to trial. And at trial he stipulated that the change of owners by donation to family trusts would not be a defense to the suit seeking a declaration of the right to construct a fence.
The partnership that owned Lot 8 at the time of the first trial was the plaintiff in the second suit. Since Claitor (a defendant in the first trial) was a general partner of the partnership, and since the other partners were his wife (a witness in the first trial) and the trustee of the four trusts he created during the course of the first litigation, we conclude that all plaintiffs in this suit had actual notice of the first suit, although Juban Properties did not file a notice of lis pendens.[8] We further conclude that the parties in each suit are the same for the purpose of the plea of res judicata.
For these reasons and the reasons stated in our original opinion, we reinstate our original decree affirming the judgments of the court below.
ORIGINAL DECREE REINSTATED.
DENNIS, J., dissents for additional reasons and the reasons assigned by him on original hearing.
CALOGERO, J., concurs for reasons assigned by FEDOROFF, J. ad hoc.
FEDOROFF, J. ad hoc, concurs and assigns reasons.
BLANCHE, Justice, recused. *404 

ON REHEARING
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons originally assigned and for additional reasons. The combined effect of the majority on rehearing and the concurring opinion unjustifiably weaken or nullify recent holdings of this Court.
In Welch v. Crown Zellerbach, 359 So.2d 154 (La.1978) we held that collateral estoppel is a doctrine of issue preclusion alien to Louisiana law. In the present case this Court retreats from that position by precluding litigation of an issue without there being an identity of the parties or the causes.
In Mitchell v. Bertolla, 340 So.2d 287, 291 (La.1976), this Court held that "cause" is defined as "the juridical or material fact which is the basis of the right claimed, or the defense pleaded," which may be likened to the ground or theory of recovery. Under this holding, the cause in the present case is not identical to that litigated before. Justice Lemmon's opinion concedes that the legal effect of Civil Code article 2275 was not raised until the second suit. However, he maintains that the effect of any alleged verbal permission by Juban for Claitor to *405 use the servitude was finally decided in the first suit. But this cannot be so, because proof of an extrajudicial admission that such permission was given does not have the same legal effect as an in-court confession under oath of such permission by Juban. Thus, by asserting a cause under Civil Code article 2275, plaintiffs have raised a new ground or theory of recovery. If we remain true to what we said in Mitchell v. Bertolla, supra, the plaintiff should be given a chance to have Juban admit under oath that a servitude was given which is being infringed by his fence.
Justice Fedoroff's concurring opinion correctly points out that the transferee partnership, which is a separate legal entity from Claitor, was not joined as party as might have been done under Code of Civil Procedure article 807. However, he and the majority erroneously state that Claitor "stipulated" that the partnership would be "bound." Claitor did not say anything. His lawyer said that the transfer would not be raised in "defense" in the first suit. However, the lawyer was not authorized to represent or stipulate for the transferee partnership that was not a party to the litigation. Furthermore, the transfer was not raised in defense of the first suit and the stipulation fell short of joining or substituting the transferee partnership as a party in that suit which requires amendment of the pleadings and service of a copy thereof and court orders on the partnership. See La.C. C.P. art. 807, comment (b).
Accordingly, the transferee partnership was not a party to the first case, and since the particular property involved was transferred before judgment in the first lawsuit, the transferee was not an ayant cause, but was a third party insofar as the judgment therein is concerned. 1 M. Planiol, Civil Law Treatise, § 304 (La.St.L.Inst.Transl. 1959); 1 M. Pothier on Obligations, § 56 (Evans Transl.1853).
FEDOROFF, Justice ad hoc, concurring.
Plaintiffs argue that the Claitor partnership, having acquired under particular title, before judgment, was not an ayant cause bound by that judgment. They argue further that absent recorded notice of the suit, the partnership acquired ownership free from the effect of the eventual judgment.
C.C.P. Art. 807 was designed to solve this problem. It provides:
When a party to an action transfers an interest in the subject matter thereof, the action shall be continued by or against such party, unless the court directs that the transferee be substituted for or joined with the transferor.
Claitor was on the witness stand when he first disclosed that he had donated the property to the partnership after the suit had been filed. At this point Art. 807 would have come into play. But Claitor, through his Attorney, stipulated that this transfer would not be used as a defense.[1] Claitor was speaking as much for the partnership, as its general partner, as for himself individually. The partnership, as record owner of the property, had a greater interest in a prompt (and hopefully favorable) resolution of the suit than did Claitor individually. The agreement clearly meant that the partnership was to be bound by whatever judgment was rendered. It could have no other meaning.
Claitor had complete authority to speak for the partnership. As the only general partner, he was vested (by Art. 10 of the Articles) with:
".......full power to:
a. manage the property;

*406 c. sell, transfer, assign, convey, lease, sublet, Mortgage or otherwise dispose of or deal with all or any part of the property except as otherwise agreed among the Partners."
In fact, only Claitor could so bind the partnership. Art. 10 concludes:
"The Partners in Commendam shall not participate in the management or control of the Partnership's business, nor shall they transact any business for the Partnership, said powers being vested solely and exclusively in the General Partner."
Juban and the Court accepted this stipulation and proceeded without adding the partnership as a defendant. Having induced such reliance, the partnership cannot now be heard to repudiate the stipulation.
NOTES
[1] 354 So.2d 672 (La.App. 1st Cir. 1977).
[2] 356 So.2d 440 (La.1978).
[3] Plaintiffs have neither assigned as error nor briefed in this court or in the court of appeal the dismissal of T.G.&Y. on its exception of no cause of action. The only mention in the court of appeal's decision of T.G.&Y.'s dismissal is in a footnote stating that the exception was sustained by the trial court and plaintiffs' claim against T.G.&Y. was dismissed. Accordingly, we consider plaintiffs to have abandoned any objections concerning T.G.&Y.'s dismissal. Moosy v. Huckaby Hosp., Inc., 283 So.2d 699 (La.1973); Wier v. Grubb, 228 La. 254, 82 So.2d 1 (1955); State v. New Orleans Parkway Comm'n, 215 La. 779, 41 So.2d 678 (1949). In any event, we consider T.G.&Y.'s exception of no cause of action to have been properly sustained.
[4] 375 So.2d 947 (La.1979).
[5] The motion for summary judgment states in part:

On motion of defendants, ... and on suggesting to the Court that the defendants are entitled to a summary judgment on the grounds that the plaintiffs' petition, the sworn affidavit with defendants' motion and the entire record of the proceeding entitled `Juban Properties, Inc. v. Robert G. Claitor,' No. 184,274, Division `D' of the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, which are made a part of defendants' motion, show that there is no genuine issue as to material fact and that movers are entitled to a judgment as a matter of law ....
[6] The supporting affidavit provides in part:

The fence that is the subject of plaintiffs' petition was erected by Juban Properties, Inc., pursuant to a final judgment rendered in the case of `Juban Properties, Inc. v. Robert G. Claitor,' No. 184,274.
[7] Additionally, we note that the following stipulation was made at the trial of the first suit:

Q [Mr. McKinnis, Juban Properties, Inc.'s attorney].
Now, you said something a minute ago about not owning Lot 8 now. Would you explain that?
A [Claitor]. Yes, I donated it-Strike that please. We formed a family partnership about December the 31st
MR. SCHROEDER [Claitor's attorney]: This is immaterial, Your Honor.
MR. McKINNIS: We are willing to stipulate that any donation that he has made to the family and so forth has nothing to do with this case so long as they don't intend to use it as a defense.
MR. SCHROEDER: We so stipulate.
Transcript at 38. In view of our holding above that Realty must be considered to have been a party to the original suit because it acquired Lot No. 8 after that suit was instituted, we need not consider the effect of this stipulation.
[*] The Honorable Gerald P. Fedoroff participated in this decision as an Associate Justice pro tempore.
[1] This was the only reference in the petition to the Reciprocal Agreement, perhaps because the suit was directed against the owner of a lot that was not included in that agreement. The fact that an original party to the Reciprocal Agreement (Claitor) also owned Lot 8 at the time of suit was an insignificant coincidence, since Claitor was sued only as owner of Lot 8 (which could just as well have been owned by a stranger to the agreement). Stated otherwise, Claitor enjoyed no special status as owner of Lot 8 because of the fact that he also owned Parcel 1 when the Reciprocal Agreement was executed. His rights as owner of each lot are unrelated and should be considered separately.
[2] By the time of trial Claitor had conveyed an undivided interest in Lot 8 to the trustee of four trusts he created in favor of his children, and Claitor's Realty (a family partnership composed of Claitor, his wife, and the trusts) had subsequently acquired full title to Lot 8 from the trustee and from Claitor. At trial, however, the parties stipulated that the donation Claitor made to his family would not be raised as an issue in the case.
[3] Juban Properties' counsel objected on the basis that Claitor could not acquire the servitude by estoppel. The trial court permitted introduction of the evidence subject to that objection.
[4] The trustee of the trusts established by Claitor intervened and adopted plaintiffs' position.
[5] The lessee filed an exception of no cause of action. The trial court maintained the exception and dismissed the lessee from the suit. Dismissal of the lessee was not assigned as error in this court.
[6] The transcript of testimony in another suit may be filed in support of a motion for summary judgment in order to establish that there is no genuine issue as to material fact. C.C. art. 966.
[7] In 1977 (after trial of the first suit) Claitor's Realty acquired Parcel 2 from Kroger and then conveyed Parcel 2 to the trustee of the Claitor children's trusts.
[8] Actually, the trustee of the trusts failed to appeal from the adverse judgment of the trial court. That judgment arguably has required the authority of the thing adjudged as to the trustee.
[1] Tr. 38, 39:

Q (Mr. McKinnis, Juban Properties, Inc.'s attorney). Now, you said something a minute ago about not owning Lot 8 now. Would you explain that?
A (Claitor). Yes, I donated it Strike that please. We formed a family partnership about December the 31st____
MR. SCHROEDER (Claitor's attorney): This is immaterial, Your Honor.
MR. McKINNIS: We are willing to stipulate that any donation that he has made to the family and so forth has nothing to do with this case so long as they don't intend to use it as a defense.
MR. SCHROEDER: We so stipulate.