GUIDRY, Judge.
In this suit, Concerned Citizens of Cenia, Inc. and Lorena Pospisil seek a permanent injunction and/or declaratory relief to prevent the State of Louisiana, Department of Transportation and Development (hereafter DOTD) from proceeding with construction of a vertical lift-style bridge in Rapides Parish, Louisiana. In support of their demand, the plaintiffs contend that DOTD failed to comply with the requirements of the National Environmental Policy Act (42 U.S.C.A. § 4321 et seq.). The defendant filed an exception of res judicata which was referred to the merits. After trial, the court below rendered judgment sustaining the exception of res judicata and dismissing plaintiffs’ demands. Plaintiffs appeal this judgment. We affirm.
This dispute was originally considered in Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981), writs refused, La., 404 So.2d 274, wherein the plaintiffs sought the same relief they now seek. The trial court, in the prior suit, granted the relief sought by the plaintiffs, enjoining any further action in connection with the bridge project. We reversed, concluding that a proper environmental study was made in compliance with NEPA. The plaintiffs’ application to the Supreme Court for supervisory writs was denied. Thereafter, the plaintiffs brought the present suit.
The bridge in question, which is now under construction, is a semi-high level vertical lift span which will cross the Red River and connect Main Street in downtown Pine-ville with Jackson Street in downtown Alexandria. The bridge is being built to replace the Murray Street Bridge, also a lift-style bridge, which in its present condition, is hazardous to the travelling public. While the project was in its planning stages, the DOTD prepared a “Draft Negative Declaration” and later a “Final Negative Declaration” pursuant to 42 U.S.C. § 4332(2)(C). These documents reflected the conclusion of the DOTD that the proposed bridge would have no significant impact on the environment of the Alexandria-Pineville area. Throughout this controversy, the plaintiffs have maintained that the proposed bridge would have a significant impact on the environment due to the frequency with which the bridge would be opened to accommodate barge traffic on the Red River. They argue that the effect such openings will have on traffic, air pollution, noise, loss of man hours, etc., amounts to a significant impact, for which NEPA requires an “Environmental Impact Statement” rather than a “Negative Declaration”. The plaintiffs’ allegation of non-compliance with NEPA is based on the failure of the DOTD to submit an “Environmental Impact Statement” rather than a “Negative Declaration”.
During the trial of the first suit, it was learned that the United States Corps of Engineers was considering a proposal to raise the pool level of the Red River at Alexandria from 58 to 64 feet. The trial was recessed for 30 days to allow the DOTD and the Federal Highway Administration to study the environmental impact that the bridge openings would have on the area given a 64 foot pool level. When trial resumed, testimony was given on behalf of *1337 the DOTD and the FHA that the proposed change in the pool level would not change their opinion that the proposed bridge would have no significant environmental impact on the Alexandria-Pineville area. Following the final resolution of the first suit, the Corps of Engineers completed its study of the pool level of the Red River and decided to recommend that the pool level be raised to 64 feet at Alexandria.
Following the completion of this study by the Corps, the plaintiffs brought the present suit. In opposition to the exception of res judicata, they argue that significant facts have been modified so as to create new legal, conditions between the first and second suits. In particular, they urge that when we considered the first suit, we failed to take into account the possibility that the pool level might be raised to 64 feet because we regarded that possibility as too speculative. They assert that as a result of the recent Corps of Engineer’s study, a change in the pool level is a strong probability, and that we must now resolve the issue of compliance with NEPA in light of the proposed change in the pool level.
In Louisiana, the doctrine of res ju-dicata applies when the following conditions are met: the thing demanded must be the same; the demand must be based on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality. LSA-C.C. Art. 2286; R.G. Claitor’s Realty v. Juban, 391 So.2d 394 (La.1980).
In the present suit, all parties agree that the thing demanded, an injunction enjoining construction of the bridge, is the same. Likewise, all agree that the demand is between the same parties, and formed by them against each other in the same quality.[1] Thus, the narrow issue before us is whether the present suit is based on the same cause as the prior suit. The plaintiffs argue that the cause of the present action is the DOTD’s failure to comply with NEPA with reference to a 64 foot pool level, and that res judicata does not bar this suit because we did not previously consider this issue. This assertion is erroneous.
The issue of the environmental impact of the bridge given a 64 foot pool level was considered extensively in the prior suit by the trial court and by this court on appeal. The trial was recessed for 30 days in order that the DOTD and the FHA might study the proposed change. After the study, the DOTD concluded that the increased number of bridge openings would not result in a significant environmental impact. We considered this conclusion and determined that the DOTD had complied with NEPA. The fact that we considered the sufficiency of the DOTD’s study with regard to the 64 foot pool level, is evident from our opinion in the first suit, where we stated:
“These later studies revealed that at pool stage 64' the proposed bridge would be required to open for 64% of the barge traffic. The following analysis by the Corps of Engineers prepared in May of 1980 reflects the anticipated tows monthly with River Reach Up to Shreveport, Louisiana, and with River Reach Up to Shreveport, Louisiana, and Daingerfield, Texas:

Considering the above analysis it is seen that in the year 2005 with River Reach Up to Shreveport, Louisiana, there would be approximately five openings per day and with River Reach Up to Daingerfield, Texas there would be approximately nine openings per day. Defendant’s experts all testified that the number of openings anticipated as a result of such analysis is extremely low. There testimony in this *1338 regard is corroborated by reference to a “Summary of Navigation Openings-Movable Bridges — 1979” which was introduced in evidence as D-33.”
Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981) at p. 1073.
The plaintiffs attach great significance to our observation in the prior opinion that the proposed change in the pool level was only in its planning stages.[2] They argue that this language revealed an intent on our part to consider the sufficiency of the DOTD’s study with regard to the 58 foot pool level only. ■ The clear language of our opinion reveals otherwise. We prefaced the observation by stating that the responsible agencies (including the DOTD) did in fact give consideration to the proposed change, and we later stated our conclusions as follows:
Suffice it to say that the record reflects that the DOTD in consultation with the FHA took a “hard look” (State of California v. Bergland, D.C., 483 F.Supp. 465) at the consequences related to projected bridge openings and reached the conclusion that such openings would have no significant impact on air pollution, traffic congestion and other environmental considerations. It is true that representatives of both agencies readily admitted that no specific study was made of the loss to employers and employees in time and money which might be occasioned by projected bridge openings, however, we attach no particular significance to this alleged inadequacy.. ..
Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981) at p. 1074.
In conclusion, the sufficiency of the DOTD’s study of the environmental impact of the proposed Jackson Street Bridge with reference to a 64 foot pool level was considered in the first suit, both by the trial court and by this court on appeal. Thus, the exception of res judicata on behalf of the defendant is well founded and was properly sustained.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiffs-appellants.
AFFIRMED.

. It should be noted that the unincorporated association known as “Concerned Citizens of Rapides Parish” was later incorporated as “Concerned Citizens of Cenia, Inc.”.

. We observe now, as we did then, that a 64 foot pool level at Alexandria is by no means a certainty. Calvin Shelton of the New Orleans District Corps of Engineers testified in this case that while the Corps had determined that a 64 foot pool level is the one they would select, a final determination to raise the pool stage to 64 feet has not been made. In addition, the Mayor of Alexandria testified that the City Council would probably file suit in federal court to prevent the change in the pool level due to the possible adverse effects it would have on drainage in the city.