523 So.2d 1286 (1988)
Walter Leroy WARD, III, et al.,
v.
C.B. PENNINGTON, Sr., et al.
No. 87-C-1564.
Supreme Court of Louisiana.
April 11, 1988.
Rehearing Denied May 12, 1988.
Mack E. Barham, M. Elizabeth Talbott, Robert E. Arceneaux, Barham & Churchill, Herschel L. Abbott, Jr., Joseph P.H. Babington, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for applicants.
Phelps, Dunbar, Marks, Claverie & Sims, H. Alston Johnson, III and Frank S. Craig, Jr., Baton Rouge, and Rutledge C. Clement, Jr., New Orleans, for respondents.
LEMMON, Justice.[*]
This is an action which primarily seeks the declaration of an undivided one-half ownership interest in Mt. Pleasant Plantation and an accounting for revenues attributable to that interest. By supplemental petition, plaintiffs further seek to annul a judgment which had rejected the same demands in an earlier suit. The principal *1287 issues now before this court are (1) whether the supplemental petition for nullity of the judgment in the earlier suit was properly dismissed on a motion for partial summary judgment and (2) whether the judgment in the earlier suit precludes this action on the basis of res judicata.
Facts
Plaintiffs are the heirs of Walter L. Ward, Jr., who died in 1980. After Ward's death, his heirs discovered the letter which forms the basis of the claims in both of the actions filed by plaintiffs. The letter, dated April 2, 1957, was addressed to Ward and signed by C.B. Pennington. In the letter Pennington stated:
"This will confirm our verbal agreement that you own an undivided one-half interest in that certain agreement to purchase Mt. Pleasant Plantation, between Edward E. Brown, the seller, and myself and C.B. Pennington, Jr., a copy of which agreement is attached hereto.
"Upon your request, I will execute a formal agreement setting forth your undivided one-half interest." (emphasis added)
Plaintiffs instituted the first action in 1981. In their petition, plaintiffs alleged that Pennington executed an agreement to purchase the subject property from the former owner in February, 1957; that Pennington executed a "counter letter" on April 2, 1957, acknowledging Ward as owner of a one-half interest in the property; that by act of sale dated May 27, 1957, Pennington acquired the property on his own behalf and in trust for Ward; and that Pennington has refused to recognize Ward's interest in the property. Plaintiffs demanded a declaration of their ownership and an accounting for the revenues attributable to that ownership interest. Copies of the agreement to purchase, act of sale and "counter letter" were attached to this petition.
Defendants (Pennington, his wife and a partnership controlled by them) filed exceptions of no cause of action and prescription.[1] The trial judge maintained both exceptions and dismissed the action. In reasons for judgment, the trial judge stated that the letter relied on by plaintiffs did not purport to convey an ownership interest in the immovable property and that plaintiffs had not alleged facts in their petition which would entitle them to a declaration of ownership. The judge further ruled that any other rights accruing to Ward from the letter involved personal obligations that prescribed by the passage of ten years after the 1957 letter.[2]
The court of appeal affirmed. Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir.1983), cert. denied, 438 So.2d 572, 438 So.2d 576 (1983). The court concluded that the 1957 letter was not a counter letter, but was a confirmation of a verbal agreement that Ward owned a one-half interest in the contract to purchase the property.[3] The court further concluded that any rights which arose from the verbal agreement were personal rights which Ward abandoned or allowed to prescribe in ten years.
In April, 1985, plaintiffs filed the present action through new counsel. The petition, stating the historical background in much *1288 greater detail than had the petition in the first suit, alleged that Pennington verbally agreed to grant Ward a one-half interest in the purchase agreement in exchange for Ward's services in contacting prospects to purchase the surface interest. The petition further asserted four "theor[ies] of the case" which were based on the 1957 letter, but allegedly were different from the theory of the case in the first suit. These included: 1) stipulation pour autrui, 2) negotiorum gestor, 3) unjust enrichment, and 4) joint venture. On the basis of these theories, the petition demanded recognition of a one-half ownership interest in the property and an accounting of the revenues attributable to that interest, or alternatively a money judgment in the amounts of the revenues that plaintiffs would have derived from an undivided one-half interest in the property but for Pennington's breach of contract.
After defendants predictably responded with exceptions of res judicata, prescription and no cause of action, plaintiffs filed a supplemental petition to annul the judgment in the first suit on the basis of fraud or ill practice. Plaintiffs alleged that in the first suit defendants had furnished the trial judge with a pretrial memorandum containing false documents consisting of (1) a "file copy" of the April 2, 1957 letter with the handwritten notation allegedly made by Pennington and (2) an affidavit by Pennington that the notation was written by him on May 24, 1957.[4]
In addition to questioning the validity of the annotated "file copy" of the the 1957 letter, plaintiffs asserted that defendants had included the document (allegedly known by defendants to be a false document) and the false affidavit in the memorandum to the trial judge for the purpose of misleading and deceiving the court.[5]
In response to the supplemental petition, defendants filed exceptions of prescription and improper cumulation of actions, as well as a motion for a partial summary judgment. In their motion defendants asserted that there were no genuine issues of material fact as to the nullity action and that defendants were entitled to judgment in the nullity action as a matter of law. The entire record from the first suit was attached to the motion.
At the hearing defendants stipulated, solely for purposes of the motion for partial summary judgment, that the annotated "file copy" of the 1957 letter was a false document and that the facts in the affidavit were untrue.[6]
The trial judge granted the motion for partial summary judgment and dismissed the nullity action. After thus determining that the judgment in the first suit was valid, the trial judge further maintained defendants' exception of res judicata and dismissed plaintiffs' original petition.
The court of appeal reversed. 509 So.2d 51. As to the absence of the affidavit and the annotated letter in the record of the first suit, the court reasoned that the procedural rules for annulling a judgment contemplate that the grounds for nullity often do not appear in the record and must be established by evidence at the trial of the nullity action. Stating that improper contact with a judge could be ill practice, the *1289 court concluded that the question of the trial court's reliance on the affidavit and annotated letter in determining the merits of the first action was a genuine issue of material fact which could only be determined after a trial on the merits. Accordingly, the court reversed the partial summary judgment. The court noted, however, that the false information would only be a basis for annulling the judgment if it were shown that the trial judge relied on the information in making his decision. Because the judgment in the first suit formed the basis of the plea of res judicata in this action and the validity of that judgment was to be decided on remand, the intermediate court set aside the trial court's judgment on the exception of res judicata as being premature.
On defendants' application, this court granted certiorari. 512 So.2d 854.
Action for nullity
The action for nullity of judgment is governed by La.C.C.P. art. 2004, which provides:
"A final judgment obtained by fraud or ill practice may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintff in the nullity action of the fraud or ill practice."
Not every fraud or ill practice constitutes grounds to annul a judgment. Nullity is an appropriate remedy only when the judgment is "obtained by" fraud or ill practice. There must be a causal relationship between the fraud or ill practice and the obtaining of the judgment.
In Spence v. Spence, 158 La. 961, 105 So. 28 (1925), this court, in interpreting Article 607 of the Code of Practice (the source of Article 2004), stated that "perjury is not a ground for vacating the judgment where the judgment does not rest upon the perjured testimony, as where it relates to an immaterial matter."[7]Id. 105 So. at 30. Although the Spence decision did not turn on the quoted language, a logical interpretation of Article 2004 dictates that a judgment will not be annulled on account of fraud or ill practice in the course of a legal proceeding if the fraud or ill practice pertained to a matter irrelevant to the basis of the decision and the judgment therefore was not obtained by fraud or ill practice.
In the present case the truth or falsity of the handwritten annotation on the 1957 letter was immaterial to the legal basis for the judgment in the first suit. The judgment of the trial court on the exception of no cause of action, as stated in the reasons for judgment, rested solely on the legal conclusion that the 1957 letter attached to the petition did not contain language which was translative of title and was therefore insufficient to convey an ownership interest.[8] This conclusion, based on the insufficiency of the letter, was totally unrelated to any additional language contained in the handwritten notation on the copy of the letter in the pretrial memorandum. By deciding that the letter (with or without the notation) contained insufficient language to transfer title, the trial judge could not have been deceived by any false language written on the document that did not bear on the issue of the sufficiency of language to transfer title.[9]
As to the judgment on the exception of prescription, the trial judge concluded that any rights accruing to Ward by virtue of *1290 the 1957 letter formed the basis of a personal action which had prescribed by the passage of ten years. The reasons for judgment negated a conclusion that the trial judge was influenced by any suggestion in a handwritten notation on the 1957 letter of the reason why Ward had decided to forego his rights. Because Ward's cause of action to assert any rights based on a personal obligation had clearly prescribed, it was immaterial when or why Ward decided not to assert his cause of action.[10]
Significantly, the court of appeal in the first suit affirmed the judgments on both exceptions for essentially the same reasons given by the trial court. Thus, whether or not the lower courts actually saw the affidavit and handwritten annotation in the memorandum addressing an exception of no right of action, the judgments maintaining the exceptions of no cause of action and prescription were based on reasons unrelated to these documents.
Moreover, this case did not involve an ex parte communication to the court without notice to the opposing party. The documents in this case were furnished long before trial to opposing counsel, who in a deposition taken in the present case admitted that he employed a document examiner four months prior to judgment in the first suit and notified his clients that he suspected the notation had not been written in 1957 as claimed by Pennington. Thus, the time for questioning the validity or the admissibility of the documents attached to the pretrial memorandum was during the course of the first trial, rather than by an action for nullity of judgment three years later.
In summary, any falsity in the handwritten notation, although favorable to defendants, was immaterial to the legal issues before the court in the first suit pertaining to either the exception of no cause of action or the exception of prescription. The 1957 letter (with or without the annotation) was not translative of title, and the reasons for and timing of Ward's decision not to file suit within ten years were irrelevant to the issue of the prescriptive effect of that failure. Thus, defendants' judgment in the first suit was not "obtained by" or as a result of the affidavit and handwritten notation, even if these documents might under other circumstances form a basis for fraud or ill practice under La.C.C.P. art. 2004.[11] The immaterial document and affidavit, whether false or not, clearly had no effect on the judgment obtained by defendants in the first suit on a basis independent of the affidavit and annotated letter. The judgment granting the motion for partial summary judgment and dismissing the nullity action must be reinstated.
Res Judicata
The judgment dismissing plaintiffs' action in the first suit on peremptory exceptions of prescription and no cause of action (without ordering plaintiffs to remove the grounds for the exceptions by amendment to the petition under La.C.C.P. art. 934) determined the merits of the case and constituted a final judgment. La.C.C.P. art. 1841. Plaintiffs' appeal temporarily prevented the final judgment from becoming definitive. La.C.C.P. art. 1842. However, after the court of appeal affirmed the judgment and this court subsequently denied certiorari on September 23, 1983, the final judgment acquired the authority of the thing adjudged and became a definitive judgment. La.C.C.P. art. 1842; La.C.C. art. 3556(31).
Plaintiffs' second suit was met by an exception of res judicata. La.R.S. 13:4231, defining res judicata, provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the *1291 demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."[12]
One significant effect of a definitive judgment is that it may preclude subsequent litigation between the same parties on the same subject matter. The principal purposes of precluding relitigation of matters which have already been adjudicated are to prevent inefficient use of judicial resources, to preserve the integrity of judgments by guarding against inconsistent decisions from different courts, and to prevent unfairness that would result if a litigant were required to defend twice the merits of a single claim against him. Dixon, Booksh & Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul. L.Rev. 611 (1977).
In the present case the second suit was between the same parties, in the same capacity. The second suit also demanded the same thing, the relief sought in both suits being a declaration of plaintiffs' ownership and an accounting for revenues attributable to that ownership interest. However, plaintiffs contend that their demand in the second suit was founded on a different cause of action, namely on the grounds of stipulation pour autrui, negotiorum gestor, unjust enrichment and joint venture rather than on the counter letter theory.
The phrase "cause of action" in La.R.S. 13:4231 is generally accepted to be a mistranslation from the French, the proper translation being "cause". Sliman v. McBee, 311 So.2d 248 (La.1975); Comment, Res JudicataMatters Which Might Have Been Pleaded, 2 La.L.Rev. 491 (1940). The "cause" is the juridical or material fact which is the basis of the right claimed or the defense pleaded. 2 M. Planiol, Traite Elementaire de Droit Civil § 54A(6) (La.St. L.Inst. trans. 1959); Trahan v. Liberty Mutual Insurance Co., 314 So.2d 350 (La. 1975).
In Mitchell v. Bertolla, 340 So.2d 287 (La.1976), this court, relying on Freeman, Law of Judgments § 681 (1925), noted that "cause" may be likened to grounds or theories of recovery. The Mitchell case involved a plea of res judicata in a second suit to annul a contract. The first suit had been based on nonpayment of rent and lesion beyond moiety, while the second suit was based on fraud, misrepresentation, lack of consideration and other grounds. The court held that res judicata was not applicable because the cause in the second action was different from the cause in the first action.[13]
The present action does not seek to annul a contract, but rather seeks a declaration of ownership of immovable property (and an accounting for revenues attributable to that ownership interest) or, alternatively, a money judgment equal to the value of the revenues which would have been derived from that interest if Pennington had not breached the oral agreement confirmed in *1292 the 1957 letter. In effect, plaintiffs have cumulated two actions, an action to be declared owner of the immovable property on the basis of the legal effect of the 1957 letter and an action to enforce Ward's rights arising from the letter (in plaintiffs' words in brief, "a demand based upon breach of an agreement which preceded the April 2, 1957 letter and which required Pennington to convey an interest in the property, if acquired, to Ward") (emphasis in original).
As to plaintiffs' action seeking a declaration of ownership of immovable property based on the legal effect of the 1957 letter, even the narrowly defined res judicata in the Mitchell decision recognizes an exception in actions for ownership of immovable property. In such actions both plaintiff and defendant in the first suit must present all claims that they have to establish their title or be precluded from asserting theories that might have been asserted in the first action. Dixon, Booksh & Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611 (1977). This exception to the narrow interpretation of res judicata is predicated upon the necessity of protecting and insuring stability and security of title, preventing undue hardship or fraud with respect to third party purchasers, and obviating unnecessary successive litigation. Ryan v. Grandison Trust, 504 So.2d 844 (La.1987); Brown Land & Royalty Co. v. Pickett, 226 La. 88, 75 So.2d 18 (1954).
We therefore conclude that the judgment in the first suit settled plaintiffs' claim to ownership of Mt. Pleasant Plantation, at least as between these parties. We accordingly hold that plaintiffs' action for declaration of their ownership of Mt. Pleasant Plantation and for an accounting for the revenues attributable to that ownership is barred by res judicata.[14]
As to plaintiffs' cumulated action demanding a money judgment in the amount of the revenues of which plaintiffs were deprived by Pennington's breach of the verbal agreement, the lower courts in the first suit held that any rights accruing to Ward from the letter or the verbal agreement confirmed therein involved personal obligations, the enforcement of which Ward allowed to prescribe by not filing suit within ten years. In the second suit the trial court maintained the exception of res judicata and did not reach the exception of prescription.
Again, even under the narrow interpretation of res judicata outlined in the Mitchell decision, a judgment is res judicata as to those grounds which were decided in the first suit or were implicitly adjudicated as a necessary consequence of the decision. Here, the lower courts in the first suit, after rejecting outright plaintiffs' counter letter theory, determined that all of Ward's rights arising from the 1957 letter or from the oral agreement confirmed therein involved personal obligations that had prescribed. Any of Ward's personal rights arising from the letter on other theories of recovery was necessarily rejected as a consequence of the decision in the first case. The issue whether or not prescription had tolled on any personal obligation owed to Ward because Pennington breached on any grounds either the 1957 letter agreement or the verbal agreement confirmed therein was fully litigated in the first suit and cannot now be relitigated. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980).[15]
*1293 We therefore conclude that the trial judge properly maintained the exception of res judicata as to plaintiffs' cumulated action (or alternative demand) for a money judgment.
Decree
For these reasons, the judgment of the court of appeal is reversed, and the judgment of the trial court, which granted a partial summary judgment dismissing the nullity action and maintained an exception of res judicata, is reinstated. Costs are assessed against plaintiffs.
WATSON, J., concurs and assigns reasons.
WATSON, Justice, concurring.
The key point is that the court of appeal judgment did not in any manner rely on the letter notation and affidavit.
Therefore, I respectfully concur.
NOTES
[*] Judge James C. Gulotta of the Court of Appeal, Fourth Circuit, participated in this case as a Justice ad hoc in place of Justice Cole, who was recused.
[1] Defendants also filed an exception of no right of action, asserting that plaintiffs failed to allege Ward had accepted Pennington's offer made in the letter and that the offer expired with the death of the offeree under La.C.C. art. 1932 (former Article 1810).
[2] Plaintiffs had argued that this was a real action which prescribed only after thirty years.
[3] There was a minor difference between the reasons assigned by the trial and appellate courts. In ruling on the exception of prescription, the trial judge characterized the 1957 letter as an unaccepted offer and ruled that any rights arising out of the "offer" prescribed in ten years.

The appellate court, without expressly disagreeing, concluded that the letter was a confirmation of a verbal contract which granted Ward an interest in the agreement to purchase, rather than a counter letter which confirmed Ward's interest in land not then owned by Pennington.
Perhaps the trial judge, in considering the prescription issue, loosely used the term "offer" to indicate that the verbal agreement contemplated Ward would be required to take additional steps in order to convert his interest in the agreement to purchase into an interest in the property (such as paying his portion of the purchase price and demanding inclusion in the title or a counter letter) and had not done so timely.
[4] The text of the handwritten notation was as follows:

"May 24th
"I called Ward and told him that I am making arrangements to pass the sale of the property and asked if he still wanted a one-half interest. He told me that inasmuch as du Pont was no longer interested in the property he was going to pass up the opportunity.
"s/ C.B. Pennington"
Copies of the affidavit and annotated letter were included in the copy of the pretrial memorandum furnished by defendants to the trial judge and to opposing counsel. Neither the affidavit nor the letter was admitted into evidence at the hearing on the exceptions in the first suit, and neither was included in the record lodged in the court of appeal.
[5] According to defendants, the purpose of the affidavit in the memorandum was to show that Ward had not accepted Pennington's offer and that Ward's heirs had no right of action on the offer that expired on Ward's death. The trial court subsequently overruled the exception of no right of action, but dismissed the case on other exceptions.
[6] The evident purpose of the stipulation was to eliminate the validity of the document as a factual issue in the decision on the motion.
[7] Article 607 of the Code of Practice provided:

"A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses or producing forged documents, or by denying having received the payments of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment."
[8] An exception of no cause of action must be decided on the petition only. La.C.C.P. art. 931.
[9] Although defendants conceded the falsity of the document in order to eliminate that issue as to the motion for summary judgment, they did not concede that they had filed the document to deceive the court. To the contrary, defendants pointed out in brief that the document was filed in connection with their exception of no right of action, as stated in footnote 4.
[10] In this regard, there is no suggestion that Ward was misled or deceived into failing to assert his claim timely. Plaintiffs only contention of misleading by defendants is that defendants obtained the judgment in the first suit by misleading the trial judge with the handwritten notation.
[11] If defendants in fact filed false documents or affidavits in the record, such conduct might give rise to other consequences. See La.R.S. 14:123.
[12] The requirements for res judicata were formerly contained in La.C.C. art. 2286.
[13] The author of this opinion probably agrees with the result in the Mitchell decision, but disagrees with the broad language.

A party to a contract should not be allowed to relitigate the validity of the contract every time he is ingenious enough to conjure up new grounds for doing so if the party knew or should have known of the grounds at the time of the first action. The test for relitigation should generally be the same test as for a new trial based on newly discovered evidence whether the party in the exercise of due diligence could have determined the grounds (or obtained the new evidence) before or during the first action (or trial). See La.C.C.P. art. 1972. Any reasonable concept of judicial efficiency would not permit a party to bring suit after suit on the same contract when the party knew or should have known of the facts supporting the subsequently alleged grounds at the time of the first action.
Because fraud was alleged in the second suit, relitigation should not have been barred unless the facts constituting fraud were actually known at the time of the first action (as long as the second suit was brought within a reasonable time after discovery).
Moreover, the author disagrees that "cause" should be likened to grounds or theories of recovery. If "cause" is the material or juridical fact which is the basis for the right claimed, then the material facts constituting the cause should not be relitigated because the losing party's lawyer develops another legal theory of recovery applicable to the same facts.
[14] The only demands for accounting in the present case were those which were ancillary to the demand for recognition of ownership. Plaintiffs clearly were not entitled to an accounting for the revenues which accrued to the owners of the property until they established their claim to ownership. When plaintiffs' claims to ownership were rejected in a judgment which has now acquired the authority of the thing adjudged, their claims for the ancillary right to an accounting for the revenues attributable to ownership also fell.
[15] In Claitor's Realty, defendants had obtained a declaratory judgment allowing construction of a fence which restricted plaintiff's access to its immovable property, despite plaintiff's assertion of a verbal agreement to use a certain driveway for access to its property. After the fence was constructed, plaintiff filed suit seeking removal of the fence alleging that a servitude had been created as a consequence of the same verbal agreement and setting forth a new legal argument to support its contention that a servitude had been created. This court maintained the exception of res judicata, holding that the question of whether the verbal agreement created a servitude had been fully litigated in the first suit and "[a]ny servitude rights arising from the verbal agreement cannot now be relitigated".