DOUCET, Judge.
This is an appeal from a judgment dismissing a concursus proceeding on an exception of res judicata.
Nerco Oil & Gas, Inc. (NERCO), the operator qf the property in question, invoked this concursus proceeding upon being notified that Judge and Mrs. Jim Johnson were claiming the proceeds of certain mineral interests adverse to the claims of Mrs. Betty Beason and her descendants in title (The Beason Group). The Johnsons filed a third party demand against Beason. The Beason Group filed exceptions of res judicata, no right of action, no cause of action, and improper cumulation of actions.
After a hearing on the exceptions the court granted the exceptions of res judica-ta, no right of action, and no cause of action. The court further granted Mrs. Beason’s individual exception of no right of action on the basis that her ownership had been previously adjudicated. The Johnsons appeal. We affirm.
The Johnsons assign as error the trial court’s finding that a prior concursus pro *1225 ceeding involving the same mineral rights bars their action against Beason. In order to determine whether the action is res judi-cata we must review the facts of the prior proceeding.
In 1964, the heirs of Rayford and Watson Taylor (Taylor Heirs) conveyed a royalty interest in certain mineral production to C.C. Copeland. Copeland transferred his interest to L.M. Hudson. Hudson transferred his ownership interest to Judge Jim Johnson. Johnson executed a mineral lease to Placid Oil Co. (Placid), NERCO’s antecedent. On July 2, 1966, in a transaction now attacked as a forgery, Betty Bea-son acquired Johnson’s interest. Mrs. Bea-son subsequently conveyed her interest to others.
In 1970, Placid filed a concursus proceeding as a result of a claim by the Taylor Heirs that their conveyance to Copeland was a nullity. Johnson was named defendant in the concursus proceeding. Since he was a resident of Arkansas, a curator ad hoc was appointed to represent him. Mrs. Beason intervened in the concursus claiming an interest in the minerals.
While the matter was awaiting trial, some of the Taylor Heirs entered a compromise settlement agreement with Mrs. Bea-son. The trial court declared the deed from Taylor to Copeland to be invalid. However, the settlement agreement was given effect by the court. Placid appealed. Mrs. Beason and the Taylor Heirs did not appeal. This court on appeal of that decision reversed in part finding that the compromise was also invalid. The Supreme Court found both the conveyance to Copeland and the compromise to be valid and remanded the case to this court for the. purpose of deciding the effect of certain leases granted to Placid by the Taylors prior to the conveyance by Copeland.
In 1988, NERCO received notice that the Johnsons were claiming the monies paid to The Beason Group as a result of Mrs. Bea-son’s compromise with the Taylors because Johnson claimed that the conveyance to Mrs. Beason from Johnson was forged.
The Johnsons now appeal the trial court’s dismissal of their claim. The only question before us is whether their claims were previously adjudicated.
The Johnsons contend that their demand against Mrs. Beason in the second proceeding is founded on a different cause of action in that they are demanding not an adjudication of ownership of the royalty interest, but entitlement to the proceeds of the settlement agreement between Beason and the Taylor Heirs.
The Louisiana Supreme Court in Ward v. Pennington, 523 So.2d 1286, 1290 (La. 1988) stated that:
“... La.R.S. 13:4231, defining res judi-cata, provides:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.” 12
One significant effect of a definitive judgment is that it may preclude subsequent litigation between the same parties on the same subject matter. The principal purposes of precluding relitigation of matters which have already been adjudicated are to prevent inefficient use of judicial resources, to preserve the integrity of judgments by guarding against inconsistent decisions from different courts, and to prevent unfairness that would result if a litigant were required to defend twice the merits of a single claim against him. Dixon, Booksh & Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611 (1977).
(footnote omitted)
The Court goes on to state that:
“... even the narrowly defined res judi-cata in the Mitchell [v. Bertolla, 340 So.2d 287 (La.1976) ] decision recognizes an exception in actions for ownership of immovable property. In such actions both plaintiff and defendant in the first suit must present all claims that they have to establish their title or be preclud *1226 ed from asserting theories that might have been asserted in the first action. Dixon, Booksh & Zimmering, Res Judica-ta in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611 (1977). This exception to the narrow interpretation of res judi-cata is predicated upon the necessity of protecting and insuring stability and security of title, preventing undue hardship or fraud with respect to third party purchasers, and obviating unnecessary successive litigation. Ryan v. Grandison Trust, 504 So.2d 844 (La.1987);" Brown Land & Royalty Co. v. Pickett, 226 La. 88, 75 So.2d 18 (1954).”
Ward v. Pennington, supra, at p. 1292.
It is the Johnsons’ argument that res judicata does not apply to their action for the proceeds of the settlement because it is not an action to determine ownership of the mineral rights which he concedes were determined by the prior action.
Careful examination of the settlement agreement between Beason and the Taylor Heirs reveals that its effect is to determine ownership of the mineral rights. Under the circumstances, we fail to see how the right to the proceeds of those mineral interests can be separated from the ownership of the interests themselves. The facts required to establish each are the same. See: Ward v. Pennington, supra, footnote 13, at p. 1291. Accordingly all claims with regard to such ownership should have been presented in the first action and the Johnsons are precluded from asserting the forgery theory since he could have asserted it at that time.
The Johnsons next argue that they did not have knowledge of the first suit and therefore were prevented from asserting the forgery at that time. We find no merit in this argument. The record in the original litigation which was introduced as an exhibit into the record of this case, reflects that a curator ad hoc was appointed to represent Johnson since he was an absentee. The record reflects that the curator did make a general appearance on behalf of Johnson. The Johnsons do not dispute the propriety of the appointment. They argue that the curator failed to contact Judge Johnson and keep him informed of the progress of the litigation and the claims of Mrs. Beason. We do not believe that any failure on the part of the curator can overcome the effect of res judicata.
La.C.C.P. Art. 5098 states that:
“The failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith.
For a wilful violation of any provision of Articles 5092 through 5096 an attorney at law subjects himself to punishment for contempt of court, and such further disciplinary action as is provided by law.”
As a result, even if the curator did fail to inform Johnson of the claims of Beason, the ownership was validly and finally determined by the prior litigation. That judgment cannot now be attacked on grounds available to the parties at the time of the previous litigation because of any failure on the part of the curator to fulfill his duties.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.