| .CARTER, C.J.
Richard P. Guidry appeals the denial of his petition seeking to annul a prior judgment finding appellant, along with Elmo Pitre, Jr., and Belle Pass Terminal, Inc. (Belle Pass) liable on a $2 million promissory note.
BACKGROUND
This litigation arises out of a business deal gone sour between Guidry, Pitre, Belle Pass, Joseph E. Blanchard, Jr., Jolin, Inc. (Jolin), and Harold Calíais. The facts detailing the original dispute and resolution can be found in our prior decision in this matter, Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1st Cir.3/11/94), 634 So.2d 466, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
To briefly summarize the background, the Belle Pass litigation arose from the sale of a marine terminal and docking facility at Pass Fourehon in Lafourche, Louisiana. Blanehard!s company, John, owned the facility and leased the land used for the facility from Caillouet Land Company (CLC). By the express terms of the leases, Blanchard/Jolin could not sell, assign, or transfer the leases without CLC’s consent.
In early 1989, Blanchard informed Pitre of his desire to sell his business on the docks. Following several attempts to secure potential buyers and the necessary financing, Pitre, Calíais, and Guidry formed a corporation, Belle Pass, which would purchase the dock and other fixed assets from Jolin in exchange for a mortgage and promissory note for $2 million with an interest rate of 13%, payable in 120 monthly installments. This transaction was executed on April 6, 1989. Gui-dry, as president of Belle Pass, signed the note and Guidry and Pitre personally guaranteed the note. Calíais purchased certain movable property from Jolin for $1 million; however, Calíais did not guarantee the $2 million note. CLC was not informed of the transaction between the parties.
*1253 After the sale, the Belle Pass business struggled and the relationships between the parties became strained. Pitre, who was working as the manager of the dock, was terminated by Guidry and Calíais following his indictment on felony counts in federal court. Pitre filed a lawsuit against Guidry and Calíais over his termination. Blanchard also became upset with Guidry and Calíais over Pitre’s dismissal from Belle Pass. It 14was only after the relationships between the parties began to deteriorate, that Calíais and Guidry revealed to CLC that there had been a transfer of the business located at the terminal.
Following the termination of Pitre, the parties encountered difficulties involving the required insurance coverage and timeliness of the scheduled payments to Blanchard. John filed a lawsuit on the promissory note against Belle Pass, Gui-dry, Pitre, and Calíais. This suit was consolidated with another lawsuit filed by Belle Pass and Calíais against Blanchard and Jolin alleging breach of warranty, red-hibition, and damages from the sale of the movable property and the purported sale and mortgage of the leases John had from CLC.
The matter was tried before a jury in early 1992. The critical issue presented to the jury concerned whether John’s lease of the CLC land had been sold to Belle Pass. The jury determined that John and Blanchard had not sold their leases issued by CLC to Belle Pass, Guidry, and Pitre. As a result of this determination, judgment was rendered in the action on the promissory note in favor of John and Blanchard and against Belle Pass, Guidry, and Pitre for $2 million, interest of 13% per annum from April 6, 1989, with a credit for previously paid installments, and attorney’s fees of $125,000.00. This portion of the judgment was affirmed on appeal by this court in Belle Pass, 634 So.2d at 488.
FACTS
As a result of the verdict and judgment, Belle Pass declared bankruptcy. In the bankruptcy proceeding, Blanchard foreclosed on his mortgage and succeeded in reclaiming the terminal facility. Blanchard began executing his judgment against Guidry, but made no effort to execute against Pitre until May 7, 1995. By that time Blanchard was unable to execute the judgment against Pitre because Pitre had also declared bankruptcy.
The proliferation of litigation spawned by the 1989 Belle Pass transaction continued on September 18, 1995, when Rodney J. Martin filed a suit for breach of contract against Blanchard, Blanchard’s wife, Linda, and Elmo Pitre, III d/b/a R & J Trucking Company. Martin alleged the defendants were jointly and solidarily liable to | Rhim for the principal sum of $34,096.88, and also sought to recover lost profits and damages allegedly resulting from the defendant’s alleged breach of contract. Martin’s case was consolidated with a suit on a promissory note filed by Blanchard against Elmo Pitre, III (Pitre, III).
The testimony in Martin’s case revealed that in early 1991, Pitre (the father of Pitre, III) approached Rodney Martin with a scheme he claimed would be very profitable for himself and Martin. Pitre explained that Blanchard was engaged in litigation arising from the sale of the terminal facility at Port Fourchon to Belle Pass and that Blanchard needed help in paying his legal fees.
According to Martin, Blanchard and Pi-tre were seeking to obtain a judgment against Calíais for the $2 million note. Martin’s role was to provide funds to Blanchard on his legal expenses and in exchange he would be considered an equal partner when Blanchard and Pitre returned to business in Fourchon 'at the old Jolin facility. Martin subsequently took out loans on his home in order to funnel money to Blanchard for his legal fees. According to Martin, his arrangements with Blanchard and Pitre were to be kept secret from Calíais and Guidry. Martin was never repaid for his loans that provid *1254 ed Blanchard with funds to pay his legal expenses and his lawsuit ensued.[2]
When Guidry became aware of the alliance between Blanchard and Pitre, he filed a suit on November 15, 1995, pursuant to LSA-C.C.P. art. 2004 seeking to annul the prior judgment in the Belle Pass litigation that was originally rendered on March 2, 1992. Guidry contended that he knew nothing of the pact between Blanchard and Pitre until Martin’s suit was filed in September, 1995. Guidry argues that had the jury in the 1992 Belle Pass trial known of the relationship that existed between Blanchard and Pitre, and if it had known that Pitre was directing Martin to provide funds to Blanchard for his legal expenses, the jury would have rejected the Blanchard/Pitre version of the 1989 transaction.
|fiAfter a trial on this matter, the trial court denied Guidry’s petition seeking annulment of the judgment, making him liable on the $2 million note. Guidry appeals the judgment of the trial court, and specifies the following as his assignments of error:
1. The trial court erred in concluding that Pitre and Blanchard did not commit fraud or ill practices within the meaning of LSA-C.C.P. 2004 in the Belle Pass litigation.
2. The trial court applied an improper standard in reaching its decision that the Belle Pass judgment should be annulled, namely that evidence of collusion and concealment of collusion by Pitre and Blanchard would not have made a difference in the outcome of the Belle Pass litigation.
DISCUSSION
The trial court is accorded great discretion in deciding when a judgment should be set aside for fraud or ill practices. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071 (La.1983), State v. Batchelor, 597 So.2d 1132, 1135 (La.App. 1st Cir.1992), writ denied, 604 So.2d 964; Dismuke v. Quaynor, 25,482, p. 11 (La.App. 2nd Cir.4/5/94), 637 So.2d 555, 563, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164.
Louisiana Code of Civil Procedure article 2004 provides in part that, “A final judgment obtained by fraud or ill practices may be annulled.” Our jurisprudence outlines two criteria for this determination, (1) when the circumstances under which the judgment was rendered show the deprivation of the legal rights of the litigant who seeks relief, and (2) when enforcement of the judgment would be unconscionable and inequitable. Roach v. Pearl, 95-1573, pp. 6-7 (La.App. 1st Cir.5/10/96), 673 So.2d 691, 695.
The legal right of which a litigant must be deprived to have a judgment annulled has been defined as the opportunity to appear and assert a defense. Johnson v. Jones-Journet, 320 So.2d 533, 537 (La.1975); Foret v. Terrebonne, Ltd., 93-676, p. 3 (La.App. 5th Cir.1/25/94), 631 So.2d 103, 105. “Fraud on the court” is fraud that is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. FDIC v. Innovative Telephone Communications, 179 F.R.D. 181, 184 (E.D.La.1998). When ill practices are alleged, the court must examine the case from an equitable viewpoint to determine whether the party seeking annulment has met the burden of showing “how he was prevented or excused” from asserting his claims or defenses. Foret, 631 So.2d at 105.
17Guidry asserts he was deprived of his right to a fair trial because of the fraud and ill practices perpetrated by Blanchard and Pitre via their illegal “Mary Carter” agreement. The agreement between Pitre *1255 and Blanchard was for Pitre to assist Blanchard with payment of his legal fees and Blanchard would not attempt to execute or collect from Pitre if a judgment was rendered against him. Blanchard and Pitre planned to go back into business together once Blanchard regained control of the terminal facility. According to Gui-dry, there was every yeason for the jury to credit Pitre’s testimony absent proof of the existence of this agreement
Guidry argues it is a fundamental legal right for the trier of fact to know how the parties are aligned, otherwise credibility and motivation cannot be assessed. Gui-dry argues the jury had no opportunity to weigh the bias and assess the credibility of Pitre in light of the agreement and relies upon the decision of Stockstill v. C.F. Industries, Inc., 94-2072, p. 11 (La.App. 1st Cir.12/15/95), 665 So.2d 802, 812, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428, which holds that evidence of a settlement may be properly admissible to prove bias of a witness.
However, we must consider that jurisprudence has defined “legal right” as the opportunity to appear and assert a defense. Johnson, 320 So.2d at 537. It is undisputed that Guidry received notice of the trial and was present with counsel on his behalf. The issue becomes whether the failure to present the fact finder with details of the agreement between Blanchard and Pitre deprived Guidry of an opportunity to assert a defense.
Jurisprudence on this issue reflects that not every fraud or ill practice constitutes grounds to annul a judgment. There must be a causal relationship between fraud or ill practice and obtaining of the judgment. Ward v. Pennington, 523 So.2d 1286, 1289 (La.1988). The party seeking annulment of a judgment must demonstrate how he was prevented or excused from asserting any defenses he may have had, i.e. that he was deprived of the knowledge of the existence of the defense relied on, or of the opportunity to present it, by some fraud or ill practice on the part of the other party. Lieber v. Caddo Levee District Board of Commissioners, 32,551, p. 4 (La.App. 2nd Cir.12/8/99), 748 So.2d 587, 591, writ denied, 2000-0561 (La.4/7/00), 759 So.2d 763.
IsThe issue at the 1992 trial concerned the true intent of the parties as to whether the leases were sold and whether the contract should be reformed. The evidence on these issues consisted of the testimony of the parties to the transaction, including Blanchard, Calíais, Guidry, and Pitre, as well as the attorneys and secretaries who drafted the documents and the accountants and other financial assistants who participated in the confection of the agreement. Belle Pass, 634 So.2d at 480.
In its Reasons for Judgment, the trial court outlines several instances where the jury could have concluded that Pitre was a biased witness who had sided with Pitre and had something to gain from the outcome. As the trial court concluded, Gui-dry had ample opportunity to present Pi-tre’s bias against him and his favoritism toward Blanchard.
In the 1992 trial, Pitre testified against his own codefendants, Calíais and Guidry, saying it was never their intention to transfer the leases in the April 1989 transaction. Although he placed himself in danger of being liable on a $2 million note, clearly his testimony was favorable to Blanchard. Pitre admitted to meeting with Blanchard and his attorney several times prior to the 1992 trial to prepare for his testimony. Pitre also testified that he filed a lawsuit against Guidry and Calíais over his termination from the dock. Pitre also admitted in the 1992 trial he was a convicted felon.
Pitre was cross-examined by Calíais’ attorney during the 1992 trial and was asked, “Do you recall telling people that Mr. Calíais was going to be out, Mr. Joe (Blanchard) was coming back, and that you were coming back with him?” Pitre denied making these exact statements, but *1256 the record does not indicate any further exploration of this issue.
During the 1992 trial, Guidry also testified that Blanchard was very upset with him and Calíais over Pitre’s termination. Calíais testified that he and Pitre has been in business together once before and it did not end well. Calíais also testified that he believed Blanchard was scheming against him, and that the Cancienne letter about the insurance was just a ploy to get the business back. According to Calíais, Blanchard was very angry over Pitre’s termination and Calíais suspected Blanchard wanted to take over the docks again.
lain its Reasons for Judgment, the trial court indicated that it was obvious to the jury from Pitre’s testimony that he was angry with Calíais and Guidry and that he was siding with Blanchard. It was also evident that Calíais and Guidry at the very least suspected Pitre had something to gain from his testimony on Blanchard’s side of the case.
We do not find Guidry was deprived of knowledge that Pitre was biased. The trial court pointed out that Pitre was biased against Calíais and Guidry because of his termination from Belle Pass. However, Guidry offers no other evidence that Pitre or Blanchard were further cross-examined about the nature of their relationship. There was enough evidence introduced to reveal that Blanchard and Pi-tre were both upset because of Pitre’s termination from the docks. Pitre had even filed suit against Calíais and Guidry over his termination. Also, Pitre had admitted to meeting with Blanchard’s several times to prepare for his testimony, testimony that although was favorable to Blanchard, could expose Pitre to liability on the $2 million note. If Guidry and Calíais suspected Pitre had made a deal with Blanchard, they were remiss in not being more vigilant to discover the nature of the deal. Simply because Guidry failed to discover the extent of the relationship between Pitre and Blanchard does not allow us to consider that the judgment was brought about by fraud or ill practices.
We also note that Guidry asserted that the trial court applied an improper standard in reaching its decision, namely that the evidence of the agreement between Blanchard and Pitre would not have made a difference in the outcome of the Belle Pass litigation. Oui; review of the trial court’s detailed Reasons for Judgment indicates that the 1992 Belle Pass trial presented conflicting testimony as to whether the parties intended to sell the leases in the April 6, 1989 transaction. We do not find the trial court applied an improper standard considering the trial court extensively enumerated the opportunities Gui-dry had to assail the credibility of Pitre.
The deprivation of a legal right is the denial of an opportunity to present a defense, and the trial court clearly detailed that Guidry presented a basis for the jury to reject the testimony of Pitre and Blanchard. The trial court pointed out in painstaking detail that although Guidry may not have known of the alliance between Pitre and |inBlanchard, there was ample opportunity for a fact finder to conclude that Pitre and Blanchard were aligned. In the final analysis, although we find the actions of Pitre and Blanchard unscrupulous and reprehensible, under the facts of this case we cannot say the judgment was obtained by fraud or ill practices within the meaning of LSA-C.C.P. art. 2004.
CONCLUSION
Accordingly, we find that there was no deprivation of Guidry’s legal rights and need not consider whether enforcement of the judgment would be inequitable and unconscionable. The judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Richard Guidry.
AFFIRMED.

. Martin did obtain a judgment against Blanchard and Elmo Pitre, III d/b/a R & J Trucking, which was affirmed by this court on March 2, 2000, in an unpublished opinion, Joseph E. Blanchard, Jr. v. Elmo J. Pitre, III, 98-2115, consolidated with Rodney J. Martin v. Joseph E. Blanchard, 98-2116.