**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**21-658**

**CAMILLE LANDRY, ET AL.**

**VERSUS**

**PEDIATRIC SERVICES OF AMERICA,**

**INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20132251
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY H. EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED.**

**John Layne Hammons**
**Cornell R. Flournoy**
**William W. Murray, Jr.**
**R. Clayton Christian**
**Nelson & Hammons**
**315 S. College Road, Suite 146**
**Lafayette, LA 70503**
**(337) 534-0515**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Camille Landry**
  **Camille Landry obo Tai Landry**
  **Ryan Landry**
  **Ryan Landry obo Tai Landry**

**John Michael Veron**
**Veron, Bice, Palermo & Wilson**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Pediatric Services of America, Inc.**

**Ashley Miller Scott**
**Matthew C. Juneau**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**
**201 St. Charles Ave., Suite 3600**
**New Orleans, LA 70170-3600**
**(504) 566-5200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Pediatric Services of America, Inc.**

**EZELL, Judge.**

Camille and Ryan Landry, individually and on behalf of their minor child Tai Landry, appeal the decision of the trial court below denying their petition to annul a March 4, 2011 judgment in favor of Pediatric Services of America, Inc. (hereinafter PSA). For the following reasons, we hereby affirm the decision of the trial court.

The underlying basis of this matter is a prior medical malpractice lawsuit against PSA. In January of 2011, a roughly six-week jury trial was held in that case. At the conclusion of that trial, the jury found no fault on the part of PSA, allocating fault instead to a non-party physician at 100%. Judgment was signed in that matter on March 4, 2011.

Nearly two years after the judgment was signed, and just after it was upheld on appeal, one of the jurors in the matter, Kim Gisclaire, came forward with an allegation that she had an ex parte communication with original trial judge, Judge Edward Broussard, indicating that during the course of the trial she had seen her name on medical records entered into evidence. She alleged that she realized at some point she had treated the Landrys' daughter and that she had become "uncomfortable" being on the jury in the medical malpractice suit, though she has never to this day asserted she felt she would be unable to be an impartial juror to any party. She further claimed that she was told by Judge Broussard not to tell any jurors or attorneys of their conversation and to remain on the jury. Judge Broussard unequivocally denied these claims.

Based on Mrs. Gisclaire's claims, the Landrys then filed the current matter before the court, a petition to annul the March 4, 2011 judgment based on what they allege were the fraudulent or ill practices of Judge Broussard. The trial court

below held a hearing on the petition to annul. At the end of the trial, the trial court found Mrs. Gisclaire to lack credibility and found no ex parte meeting occurred. The trial court further found that, even if any such meeting had in fact happened, nothing indicated that it rose to the level of fraud or any ill practice sufficient to nullify the judgment. From that decision, the Landrys appeal.

On appeal, the Landrys assert three assignments of error. They claim the trial court erred in concluding there was no ex parte meeting between Mrs. Gisclaire and Judge Broussard and in finding no ill practices on Judge Broussard's part. They further allege that Mrs. Gisclaire's status as juror as a treating nurse and potential eyewitness inherently made the March 4, 2011 judgment unconscionable. Finally, they claim the trial court erred in not holding that Casey Blanchette's alleged knowledge of Mrs. Gisclaire's treating nurse status should be immediately imputed to Judge Broussard, due to his status as a law clerk and officer of the court.

The second and third assignments of error are alleged for the first time on appeal. "The well-settled jurisprudence of this court establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Council of City of New Orleans v. Washington*, 09-1067, p. 3 (La. 5/29/09), 9 So.3d 854, 856. Accordingly, we will only address the Landrys' first assignment of error.

"A final judgment obtained by fraud or ill practices may be annulled." La.Code Civ.P. art. 2004(A). As noted by this court in *Mosing v. Miller*, 20-632, pp. 4-5 (La. App. 3 Cir. 12/8/21), ___ So.3d ___, ___ (alteration in original).

> Louisiana jurisprudence has established a two-part test to determine whether a judgment should be annulled pursuant to Article 2004: "(1) when the circumstances under which the judgment was

2

rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable." *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983).

> [T]he article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.

*Id.*

When conduct "prevents an opposing party from having an opportunity to appear and assert a defense," that conduct has caused a deprivation of legal rights. *Id.* A deprivation of a legal right also occurs when "the litigant appears in court but is prevented from participating in a fair and impartial proceeding due to ill practices of another party." *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-149, p. 6 (La. 10/16/01), 800 So.2d 762, 767. However, matters irrelevant to the basis of a judgment will not result in its annulment. *Ward v. Pennington*, 523 So.2d 1286 (La.1988).

The decision to annul a judgment pursuant to La.Code Civ.P. art 2004 lies within the discretion of the trial court. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058. The decision regarding a petition to annul is reviewed by the courts of appeal to determine not whether the trial court's factual conclusions were right, but whether they were reasonable. *Belle Pass Terminal*, 800 So.2d 762.

With regard to the standard of appellate review of a trial court's judgment in a petition to annul, the supreme court, in *Power Marketing Direct, Inc. v. Foster*, 05-2023, p. 11 (La. 9/6/06), 938 So.2d 662, 670 (emphasis added), stated that "trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, *to which discretion reviewing courts will defer*."

We first note that in its factual findings, the trial court explicitly found the testimony of Judge Broussard and Bailiff Wilson George to be more credible than that of Mrs. Gisclaire and Mr. Blanchette, who had been Judge Broussard's law

clerk at the time. These factual findings are subject to the long-standing manifest error/clearly wrong standard of review and cannot be reversed absent a finding that no factual basis exists for the trial court's finding, and that the record establishes that the trial court's finding is clearly wrong or manifestly erroneous. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993). Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed. *Olivier v. Olivier*, 11-579 (La.App. 1 Cir. 11/9/11), 81 So.3d 22. Additionally, where the fact finder's conclusions are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

The alleged conversation with Mrs. Gisclaire concerning the medical records was unequivocally denied by Judge Broussard. This was supported by the testimony of Mr. George, who stated he never took any juror to meet Judge Broussard. Contrasting that were the disparate testimonies of Mrs. Gisclaire and Mr. Blanchette. Whereas Mrs. Gisclaire recounted the alleged meeting as being "simple," "innocent," and as "no big deal," Mr. Blanchette testified that she came to him "visibly shaken" and in tears.[1] These differing accounts were noted by the trial court in its thorough written reasons.

Moreover, the trial court stated in its reasons for judgment that it found Mrs. Gisclaire's testimony to be "replete with mis-matched descriptions, information,

---

[1] Mr. Blanchette testified that Mrs. Gisclaire told him she wanted to speak to Judge Broussard and that he took her to him, but that he physically distanced himself from the two and could not hear the substance of any alleged conversation.

4

and actions, which just did not 'add up' to the [trial] court." The trial court was concerned with the nearly two-year time period between the trial and Mrs. Gisclaire coming forward with her accusations, especially when she said she had been so uncomfortable with the result of the trial. Additionally, Mrs. Gisclaire was subpoenaed by defense counsel for deposition. While she appeared for that deposition, she refused to be sworn, gave counsel a "medical excuse", authored not by any doctor but by herself, and promised to follow-up with a doctor's confirmation; though she never did. The trial court felt these actions further undermined Mrs. Gisclaire's credibility.

After evaluating the conflicting testimony and credibility of the witnesses, and considering the other corroborating evidence introduced at the hearing, the trial court determined no ex parte meeting occurred. Allowing the proper deference owed to trial courts for determinations on credibility, after reviewing the record before us, we can find no error in the trial court's findings on the credibility of the witnesses. Therefore, we find the trial court's determination that no ex parte meeting occurred regarding medical records to be reasonable and supported by the record.

Moreover, the trial court found that the meeting, should it have actually occurred at all, would not arise to the level of an ill practice that would deprive the Landrys of any right. The record shows this to be a reasonable conclusion, even had the alleged meeting occurred.

The record shows that the Landrys were plainly aware during voir dire that Mrs. Gisclaire worked at the hospital where their daughter was treated, at the time she was treated, and with the defendant doctors in this matter. Her potential to have been an eyewitness in this matter was clear to them at the time the jury was

selected. The Landrys had the medical records whose introduction caused the controversy at issue and could have easily viewed them to see if Mrs. Gisclaire provided nursing care to their daughter directly. They did not. Nor did they object in any way to her inclusion on the jury, despite the above knowledge that she could have treated their daughter and had directly worked with the party doctors at the treating hospital.

Furthermore, Mrs. Gisclaire herself testified that the alleged ex parte meeting with Judge Broussard regarding the medical records was "very quick," "not a big deal," and was merely a "brief conversation. It was very simple. It was very innocent." She has never alleged that Judge Broussard commented on any facts before the jury or any points of law relevant to the case. She has never claimed Judge Broussard made any comments that exhibited any bias whatsoever or that anything he was alleged to have said influenced her decision-making. Mrs. Gisclaire never gave any indication that she was not, nor could not have been, an impartial juror, either at the trial or at any time afterward. In fact, the record indicates that, as a juror, Mrs. Gisclaire voted for the Landrys against PSA in this matter, meaning that any substitution of her as a juror would have been of either no consequence to the outcome at trial, or would have given PSA an even more decisive victory.[2] Again, matters irrelevant to the basis of a judgment will not

---

[2] While the jury was not polled at the time of the trial, during an April 6, 2015 hearing on the matter, counsel for the Landrys clearly states that "[Mrs. Gisclaire] voted for us with regard to PSA." The well-settled jurisprudence establishes that an admission by a party constitutes a judicial confession and is full proof against the party making it. *C.T. Traina, Inc. v. Sunshine Plaza, Inc*., 03-1003 (La. 12/3/03), 861 So.2d 156. "[A] declaration made by a party's attorney or mandatory has the same effect as one made by the party himself." La.Civ. Code art. 1853, Comment (b).

While La.Code Evidence art. 606(B) prevents jurors from commenting on "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith," jurors are routinely polled at the end of trials. We find the statement referring to Mrs. Gisclaire's mere

result in its annulment.  *Ward v. Pennington*, 523 So.2d 1286 (La.1988).  Simply put, had the alleged ex parte conversation actually occurred, the record contains nothing to show that it rose to the level of ill practice, affected the fundamental fairness of the trial, or deprived the Landrys of any rights.

The Landrys have failed to meet their burden of showing they were prevented from participating in a fair and impartial proceeding due to any fraud or ill practices of another party.  We can find no abuse of the trial court's discretion in denying the petition to annul.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are hereby assessed against the Landrys.

**AFFIRMED.**

---

vote, not as to any of her or any other juror's deliberative processes, to be no different than if the jury had been polled in this matter and to be properly before this court.